(7 Misc. Rep. 660.)

IVES v. QUINN.[1]  SAME v. CONVERSE.  SAME v. BARTLEY.  SAME v. NATHANS.

(Common Pleas of New York City and County, General Term.  April 2, 1894.)

1. REMOVAL OF CAUSES—FROM DISTRICT COURT TO COMMON PLEAS.
   An action is not removable into this court from a district court, after adjournment at the instance of the party removing, and before an order for the removal is granted.
2. SAME—APPLICATION.
   A motion by the party desiring the removal, which necessitates an adjournment, is equivalent to an application for an adjournment.

(Syllabus by the Court.)

Appeal from first district court.

Separate actions by Grace D. Ives against Peter Quinn, William R. Converse, William F. Bartley, and James S. Nathans, respectively, for trespass on real property.   From judgments in favor of plaintiff, defendants appeal.   Affirmed.

The four causes were heard together before Lynn, J., who filed the following opinion:

These are actions for damages for alleged trespass by the defendants on various occasions during the first half of the month of May last upon plaintiff's premises, a portion of the top floor of No. 12 Vesey street.   The acts complained of in the four suits all involve the same subject-matter, and, as far as applicable, the testimony in the first case is admitted as part of each of the other cases.   These suits, though of limited pecuniary consequence, present some features of an extraordinary character.   I will first consider the case against Quinn.

The plaintiff, up to the 1st of May, had been occupying for over a year about two-thirds of this floor, which extended from Vesey to Barclay street, as tenant of the Fidelity Printing Company, which occupied the remain-

[1] Reargument denied.  See 28 N. Y. Supp. 1143.

ing portion. Though in March she had notified the president of the company that she would not require her part of the loft after the 1st of May, it was subsequently agreed late in April, as plaintiff alleges, and I so find, that she could remain there as a monthly tenant, if the company did not let the premises before the 1st of May, and was to have ample time to move out, in any event. The company advertised for a tenant, but found none until the 1st of May, on which day defendant Quinn signed a lease with the company. When the plaintiff, who was then in possession, was informed of this, she said she could not possibly move her things for at least 10 days, but agreed to let Quinn store some things meantime in a portion of a small room in her premises. But having found on the 3d of May that Quinn was going to move right in with all his machinery and force, regardless of her convenience, she at once notified him, countermanding the permission, and saying that he must not come in; and, substantially, that she would not waive her right as monthly tenant for the month of May. The defendant answered that he would move in immediately, and was not to be bulldozed. The following day—the 4th—the Fidelity Company, as landlords, began "hold over" summary proceedings against plaintiff, returnable on the 8th of May. The plaintiff answered that she was in possession as a monthly tenant. The proceedings were dismissed for irregularity, and another precept was issued, returnable on May 12th. Meantime, from the 1st to the 12th of May, one-third of plaintiff's premises was occupied by defendant against her will. On the 12th an adjournment of the summary proceedings was had until the 15th. The defendant attended in court in the proceeding, and knew of the proceeding and its adjournment, and therefore knew that issue on the merits had been joined, and had full notice that the landlord had sworn that the tenant, Miss Ives, was in actual possession, and that she under oath had claimed that it was a rightful possession. Yet he demanded to be put in possession, and on the night of the 12th the defendants and the landlord, without waiting for the decision of the court, took possession of the premises, stealing in from the Fidelity Company's rooms, through a connecting door. The outer doors were then barred, to prevent any entrance by plaintiff or her employés, and she and they were kept out until the 15th. On that day the court refused to proceed with the dispossess case while the landlord and its alleged tenant, the defendant, were anticipating its judgment by force. At that time, in the court room, the plaintiff tendered to the manager of the landlord a check in payment of her rent for the month of May. This check was received, and not returned. The plaintiff thereupon, with Mr. Abercrombie, her attorney, proceeded to the demised premises, first sending for a policeman. Quietly entering her premises through the rooms of the Fidelity Printing Company, Miss Ives and her lawyer told the person she found in her premises to leave, as he was a trespasser. Then the defendant Quinn, along with a number of men, rushed in. Mr. Abercrombie stopped them at the entrance. The defendant caught hold of him around the body, and pushed him back. The policeman then arriving, Abercrombie told him if anybody laid hands on them to arrest him for assault. At this time—about 1 o'clock—Mr. Philip Carpenter, attorney for the defendants, hurried in. Mr. Abercrombie, acting for Miss Ives, stopped him at the door, and warned him not to enter. Mr. Carpenter pushed by, hit Mr. Abercrombie, the latter says, and proclaimed that Quinn could take Miss Ives' things, and throw them right out, and told him to do it. Mr. Ross, another lawyer, was there on the same side. Thus was presented the unseemly spectacle of members of the bar engaged in and encouraging a physical conflict for the forcible occupancy of premises, while the right to such occupancy was the subject of legal adjudication. The Ives party maintained themselves by holding their ground. Fifteen or 18 men, employés of the printing company and others, were in there on behalf of the defendant Quinn, and this force was increased by collecting into the building a dozen or more longshoremen, hard, rough men, at a dollar a head, to do the job of clearing out the plaintiff and her things. After three or four hours of wrangling, in which the lawyers took part, overtures were

made for a setlement. After a conference, Mr. Stewart, president of the Fidelity Printing Company, gave Miss Ives a written notice to quit on June 1st, the company agreeing to refund a proportionate part of the May rent if she left before June 1st; the company to "furnish power as usual." Miss Ives agreed in writing to accept the notice, and "to accommodate any tenant to whom the company may lease the premises" by moving certain things, "and by letting such tenant use such space from this date, without prejudice."

I think it clearly appears, from the state of facts thus partly outlined, that defendant Quinn in person and by others instigated by him committed a willful trespass upon premises rightfully in plaintiff's possession. On May 3d he took forcible possession against her protest; and his acts on the 15th,—after being in court that morning, and knowing the position the court had taken in regard to the proceeding before it, and knowing that the landlord had received a check from plaintiff for the rent, without returning it,—in going to the premises backed by officers and employés of the company, and taking forcible possession and keeping it the whole day, keeping plaintiff and her employés and customers out of the premises, in threatening to throw out her property and wholly stop her business, was a trespass under peculiarly aggravating circumstances. The plaintiff's testimony shows that from the 1st to the 15th of May her business was practically broken up. She could not finish the business she had, nor was it safe for her to take in new business, if she could not be sure of her possession for the month of May. The plaintiff, who had only herself and foreman and her girls, was kept in almost constant unrest and terror. The fact that plaintiff sold her interest in a part of the power was no excuse for her deprivation of it; and in the arrangement on the close of the struggle on the 15th the "power" is referred to as to be used as usual, so that there was no question about plaintiff's right to it as tenant. The excuse of the "advice of counsel" cannot avail, the defendant knowing as well as Mr. Ross or Mr. Carpenter that, after the matter had been submitted to the law, no interference by force was lawful; and that until the check taken for the rent on the morning of the 15th was actually returned, any further proceedings were an outrage. The unobserved smuggling of an employé into the bindery by the landlord would not justify him nor any one else in going afterwards with a lot of men and throwing tenant and her things out, while the issue of a dispossess proceeding brought by him was pending trial. There is no use of any law if such is the correct practice in proceedings to dispossess.

As to the other defendants, the testimony shows, besides other acts, that Bartley broke down the door that belonged to plaintiff; that Converse kept and obstructed the other door, and prevented egress or entrance for the afternoon of May 15th, and threatened riot and fight; that Nathans turned off the power, and hired and brought in ruffians, and, on the strength of their presence in the building, made threats and intimidation; and that all did effective work as parts of the gang that watched and tortured the plaintiff during the first half of the month. They did actual damage, and each should pay exemplary damages. They were not employed by the Fidelity Company to do these acts, nor can they be justified by its officers.

As to the suit by Ives against Quinn for use and occupation, there is no dispute that defendant occupied and used for his business a large part of plaintiff's bindery, "with power," from May 15th to June 1, 1893. The plaintiff. on the morning of May 15th, paid the full rent for the whole of said premises and power. The defendant paid no rent to any one for such use and occupation. The plaintiff says in the paper, Exhibit 4, between her and her landlord, that she will accommodate a tenant until June 1st. This does not imply that this tenant is not to pay the rent of a tenant to her, who thus accommodated and paid the rent for him. The words "without prejudice" at the end of the paper mean, if they mean anything, without prejudice to any right of the plaintiff; and it would certainly be to her prejudice to deprive her of the rent she paid for the tenant, who is taken in "to accommodate" a third party. I think the plaintiff is entitled to judgment for $27 for such use and occupation.

I find in the trespass cases that defendant Quinn has inflicted actual damage of $75, and that each of the other defendants have inflicted damages to the extent of $25. I give judgment, under the provisions of the Code, in each case for treble these several amounts.

Dated, September 26, 1893.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Jonathan C. Ross, for appellants.
Wakeman & Campbell, for respondent.

PRYOR, J. In Ives v. Quinn objection is made to the jurisdiction of the court below upon two grounds: First, that the amount of the claim was in excess of $250; and, secondly, that the action was removed into this court. Neither ground is tenable. As to the first, the action was for damages for trespass to real property, and the answer a general denial. The original demand was for $100. By amendment it was increased to $240, and the judgment rendered was within this figure. True, the bill of particulars showed a claim for $240 and treble damages, but that was ineffectual to authorize a recovery beyond the amount "stated in the complaint," and it is this sum that limits the jurisdiction of the justice. Code, § 3215. The second objection to jurisdiction is equally unfounded. It is too late to remove a cause into this court after application for an adjournment by the defendant. Code, § 3216. The indorsement of the justice on the undertaking certifies that he rejected it, and refused the removal, because the undertaking was offered after adjournment and the opening of the plaintiff. The summons was returnable July 10th, when the plaintiff appeared, and put in an oral complaint. The defendant then interposed a general denial, and then demanded a bill of particulars. The bill of particulars is dated July 12th, the trial proceeded on July 17th, and the undertaking to remove was executed the same day. Defendant disputes that he asked an adjournment, but the inference is obvious that his demand for a bill of particulars caused the adjournment. As the demand necessitated an adjournment, it was, in plain reason, equivalent to an application for adjournment. It is not apparent that the defendant objected to the adjournment. Again, no order was granted removing the cause into this court; but it is only from the time of granting such order that this court has cognizance of the action. Code, § 3216. Upon the merits, we are well content to affirm the judgments on the very satisfactory opinion of the learned justice. Indeed, the defendants are fortunate to escape with so light a penalty for such lawless and oppressive conduct. The justice of the cases being manifestly with the plaintiff, we should not reverse them for technical error in rulings on evidence. Judgments affirmed, with costs. All concur.